IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KAREN MARIE BOYD,

        Plaintiff,

v.

COMMISSIONER SOCIAL SECURITY ADMINISTRATION,

        Defendant.

Case No. 3:15-cv-01640-MA

OPINION AND ORDER

KAREN MARIE BOYD
11913 SE Schiller St.
Portland, OR 97266

    *Pro Se*

BILLY J. WILLIAMS
United States Attorney
District of Oregon
JANICE E. HEBERT
Assistant United States Attorney
1000 S.W. Third Ave., Suite 600
Portland, OR 97204-2902

LARS J. NELSON
Social Security Administration
Office of the General Counsel
701 Fifth Ave., Suite 2900
Seattle, WA 98104

    Attorneys for Defendant

1 - OPINION AND ORDER

MARSH, Judge

Plaintiff Karen Marie Boyd seeks judicial review of the final decision of the Commissioner of Social Security denying her application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-403, and application for Supplemental Security Income ("SSI") disability benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. This Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons that follow, the Court affirms the Commissioner's decision.

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff protectively filed her DIB and SSI applications on March 2, 2011, alleging disability beginning September 5, 2008, due to intestinal, back and leg problems; headaches; nausea; and dizziness. Tr. Soc. Sec. Admin. R. ("Tr.") 19, 61, ECF No. 21. Plaintiff's claims were denied initially and upon reconsideration. Plaintiff filed a request for a hearing before an administrative law judge ("ALJ"). The ALJ held a hearing on July 25, 2013, at which Plaintiff appeared with her attorney and testified.[1] A vocational expert, Gary R. Jesky, also appeared at the hearing and testified. On August 5, 2013, the ALJ issued an unfavorable decision. The Appeals Council denied Plaintiff's request for review, and therefore, the ALJ's decisions became the final decisions of the Commissioner for purposes of review.

Plaintiff was born in 1964, and was 44 years old on the alleged onset of disability date, and 49 years old at the time of the ALJ's decision. Plaintiff completed ninth grade, did not obtain a GED, has no vocational training, but can read, write, add, and subtract. Tr. 36. Plaintiff has worked

---

[1] Plaintiff was represented by counsel at the hearing. Tr. 32-33. Plaintiff's counsel withdrew as representative for her appeal at the Appeals Council. Tr. 12.

as a supply clerk and delivery driver. Tr. 68, 291, 306. Plaintiff meets the insured status requirements through December 31, 2013.

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. Each step is potentially dispositive. The claimant bears the burden of proof at steps one through four. *See Valentine v. Commissioner Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At step five, the burden shifts to the Commissioner to show that the claimant can do other work that exists in the national economy. *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012).

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since September 5, 2008. The ALJ resolved the sequential evaluation at step two, finding that there are no medical signs or laboratory findings to substantiate the existence of a severe medically determinable impairment. Thus, the ALJ concluded that Plaintiff has not been under a disability from September 5, 2008 through the date of the decision.

## ISSUES ON REVIEW

Plaintiff, who is proceeding *pro se*, contends the ALJ erred in finding that she has no severe medically determinable impairments at step two and erred in evaluating treatment notes from Mummadi Rajasekhara, M.D.; Latha Radhakrishnan, M.D.; Kevin P. Jones, D.O.; and Alan Savoy, M.D.[2] The Commissioner argues that the ALJ's decision is supported by substantial evidence and

---

[2] To the extent that Plaintiff contends her attorney rendered ineffective assistance at the hearing before the ALJ or the Appeals Council her claim is without merit. *Howes v. Berryhill*, 676 F. App'x 644, 645 (9th Cir. 2017) (noting the right to effective assistance of counsel does

3 - OPINION AND ORDER

is free of legal error. Alternatively, the Commissioner contends that even if the ALJ erred, Plaintiff has not demonstrated harmful error.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hill*, 698 F.3d at 1159 (internal quotations omitted); *Valentine*, 574 F.3d at 690. The court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014); *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation. *Batson v. Commissioner Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001); *Garrison*, 759 F.3d at 1010.

I. **The ALJ Did Not Err at Step Two**

　　*A.　Standards*

---

not apply in appeals from ALJ decisions); *accord Nicholson v. Rushen*, 767 F.2d 1426, 1427 (9th Cir. 1985) (noting generally a Plaintiff has no right to effective assistance of counsel in a civil case).

At step two of the sequential process, the ALJ must determine whether the claimant suffers from a "severe" impairment, *i.e.*, one that significantly limits his or her physical or mental ability to do basic work activities. *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). To show a severe medically determinable impairment, the claimant must first prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. §§ 404.1508, 416.908. A medically determinable impairment is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d); 20 C.F.R. §§ 404.1521, 404.921. "Signs, symptoms and laboratory findings" are defined as:

> (a) Symptoms are your own description of your physical or mental impairment. Your statements alone are not enough to establish that there is a physical or mental impairment.
>
> (b) Signs are anatomical, physiological, or psychological abnormalities which can be observed, apart from your statements (symptoms). Signs must be shown by medically acceptable clinical diagnostic techniques. . . . .
>
> (c) Laboratory findings are anatomical, physiological, or psychological phenomena which can be shown by the use of a medically acceptable laboratory diagnostic techniques. Some of these diagnostic techniques include chemical tests, electrophysiological studies (electrocardiogram, electroencephalogram, etc.), roentgenological studies (X-rays), and psychological tests.

20 C.F.R. §§ 404.1528, 416.928.

Step two has been characterized as "a threshold determination meant to screen out weak claims." *Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017); *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). Further, "[a]n impairment or combination of impairments may be found 'not severe *only* if the evidence establishes a slight abnormality that has no more than a minimal effect

5 - OPINION AND ORDER

on an individual's ability to work.'" *Webb v. Barnhart*, 433 F.3d 683, 686-87 (9th Cir. 2005) (quoting *Smolen*, 80 F.3d at 1290). An ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is "clearly established by medical evidence." *Id.* at 687 (quotation omitted). Moreover, "'under no circumstances may the existence of an impairment be established on the basis of symptoms alone.'" *Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005) (quoting Social Security Ruling ("SSR") 96-4p, *available at* 1996 WL 374187 *1)). The ALJ's role at step two is further explained in SSR 85-28:

> A determination that an impairment(s) is not severe requires a careful evaluation of the medical findings which describe the impairment(s) and an informed judgment about its (their) limiting effects on the individual's physical and mental ability(ies) to perform basic work activities; thus, an assessment of function is inherent in the medical evaluation process itself. At the second step of sequential evaluation, then, medical evidence alone is evaluated in order to assess the effects of the impairment(s) on ability to do basic work activities.

SSR 85-28, *available at* 1985 WL 56856.

*B.     Analysis*

Plaintiff argues that the ALJ erred in resolving her claim at step two. Plaintiff contends that the ALJ erroneously interpreted several treatment notes, and that her diagnosis of "severe abdominal distention" is a severe impairment. The Court disagrees.

In this case, the ALJ concluded there are "no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment." Tr. 18. The ALJ detailed that Plaintiff alleges disability due to intestinal, back, and leg problems, headaches, nausea, and dizziness. The ALJ noted that Plaintiff complained of back pain under her shoulder blades, swollen bowels and abdominal pressure, heaviness in her legs, daily migraine headaches, pressure behind her eyes, constant nausea, difficulty eating, and weight gain of 50 pounds over the previous three years.

Tr. 20-21. Contrary to plaintiff's contention, the ALJ thoroughly discussed plaintiff's medical records, and the lack of objective findings substantiating plaintiff's subjective symptoms.

For example, the ALJ discussed that an October 2008 CT scan of plaintiff's abdomen and pelvis showed uterine fibroids, and that Plaintiff underwent an elective hysterectomy. Tr. 20, 277. Following that surgery, Plaintiff complained of post-operative bloating, gas, and vomiting, underwent an extensive gastrointestinal workup, and tried gluten-free and dairy-free diets without improvement. Tr. 21, 274. As the ALJ discussed, plaintiff's GI workup was unremarkable, with a normal upper and lower endoscopy, with biopsies and celiac sprue serology all unrevealing. Tr. 21, 275-77. In July 2009, Plaintiff underwent an elective laparoscopic removal of her ovaries for unexplained abdominal pain and bloating. Tr. 20, 274. Plaintiff's ovaries were normal on pathological examination. Tr. 20, 321.

In August 2009, Plaintiff was seen by an allergist for a rash, who prescribed corticosteroids. Tr. 268-70, 321. As the ALJ discussed, plaintiff's symptoms of pain and swelling dramatically improved on prednisone, but her doctors advised against long-term steroid use due to side effects. Tr. 270, 272. Plaintiff's CT of the pelvis and abdomen in 2009 were unremarkable. Tr. 21, 272.

In August 2009, Plaintiff was referred to rheumatology for continued complaints of abdominal pain and swelling. Vandana Khurma, M.D., was unsure of the cause of plaintiff's abdominal pain, lower extremity pain, and swelling, but was uncomfortable continuing to prescribe prednisone. Dr. Khurma ordered a complete rheumatological workup – the results of which were negative. Tr. 269-73.

As the ALJ discussed, in April 2010, Plaintiff underwent a neurological consultation with Cathleen Miller, M.D. Tr. 21, 261. Dr. Miller's treatment notes reflect that Plaintiff complained of

7 - OPINION AND ORDER

an "odd array of symptoms," including light sensitivity, edema, abdominal bloating, and headaches with vision changes. Tr. 21, 261. As the ALJ correctly noted, Plaintiff informed Dr. Miller that her prior consultations with allergy, gastroenterology, optometry, and rheumatology were all negative. Tr. 21. On examination, Dr. Miller indicated Plaintiff had reduced range of motion due to pain, negative Romberg testing, normal tandem walking, and she could rise from sitting without push off, and that her reflexes and sensation in all extremities were intact. Tr. 263. The ALJ discussed that the MRI of plaintiff's brain was normal for her age, her thoracic spine MRI was unremarkable, her cervical spine MRI showed no significant spinal canal or neuroforaminal stenosis, and her lumbar MRI revealed minimal central canal narrowing with no findings to explain Plaintiff's symptoms. Tr. 259-60, 306-310.

In August 2010, Plaintiff continued to complain of abdominal bloating, and Susan Johnson, M.D., recommended a repeat endoscopy to rule out a bowel obstruction. Tr. 256. As the ALJ discussed, extensive testing in September 2010 showed no evidence of bowel obstruction. Tr. 21, 255. Plaintiff again complained of abdominal bloating in November 2010. Dr. Johnson noted that she did not believe GI was the source of her symptoms, but ordered a repeat EGD and colonoscopy with biopsies to check for vasculitis. Tr. 247. As the ALJ correctly indicated, the GI workup was again negative. Tr. 248, 294-95, 302 (X-ray, CT scan of abdomen and thorax unremarkable).

In November 2010, Plaintiff also underwent a repeat rheumatology consultation with Joji Kappes, M.D. Tr. 245. Plaintiff complained of abdominal distention, bloating, with a rash on her thighs and beet red eyes in the morning. Tr. 22, 245, 288 (repeat). When Dr. Kappes suggested that Plaintiff take a photo to document her rash and eye symptoms, as the ALJ noted, Plaintiff demurred contending the flash on the camera washes out the redness. Tr. 22, 245. In December 2010, Dr.

Kappes conducted noninvasive lower and upper extremity examinations with vascular testing. Tr. 243. The results were entirely normal. Tr. 243. As the ALJ correctly indicated, in January 2011, Dr. Kappes diagnosed "ill defined condition," and opined that Plaintiff has no systemic disease that is rheumatologic. Tr. 22, 242.

The ALJ discussed that in February 2011, Plaintiff was referred to OHSU physician Mummadi Rajasekhara, M.D. Tr. 22, 229. Dr. Rajasekhara's treatment notes reflect that Plaintiff complained of a range of symptoms including, abdominal pain, bloating, chills, fever, congestion, nausea, dizziness, tingling, weakness, and insomnia. Tr. 229-30. On examination, Dr. Rajasekhara noted no abdominal distention, but had tenderness, with a normal musculoskeletal examination and normal gait. Tr. 230. Dr. Rajasekhara noted Plaintiff has multiple complaints, and insists upon a unifying diagnosis, and suspected a functional overlay to her symptoms. Tr. 230. Dr. Rajasekhara recommended a Hydrogen breath test to check for bacteria (if not already completed). Tr. 230. As the ALJ accurately indicated, Dr. Rajasekhara described Plaintiff as a "poor historian," and ended the encounter after meeting with Plaintiff for more than two hours. Tr. 22, 230.

In March 2011, Plaintiff complained to Ruth Te-Yu Chang, M.D., that she still was experiencing abdominal pain and bloating, and headaches with stabbing pain, photosensitivity, and nausea. Tr. 22, 239. Plaintiff also reported neck swelling on the right side. Dr. Chang noted an August 2010 CT scan of that area was normal. Tr. 239-40. As the ALJ correctly indicated, at plaintiff's insistence, Dr. Chang referred Plaintiff to endocrinology because Plaintiff feels something is wrong with her adrenal glands. Tr. 22, 318.

As the ALJ detailed, Plaintiff was referred to Latha Radhakrishnan, M.D., for an endocrinology consultation on May 2, 2011. Dr. Radhakrishnan diagnosed thyroid nodule. Tr. 22,

9 - OPINION AND ORDER

321. Dr. Radhakrishnan took an extensive medical history from plaintiff, and upon questioning, Plaintiff admitted to eating an unhealthy diet and unintentionally gaining more than 35 pounds since the onset of her symptoms, and more than 17 pounds in the previous year alone. Tr. 322. Dr. Radhakrishnan's treatment notes reflect that on examination, plaintiff's abdomen was obese, protruding, non-tender, and non-distended and that Plaintiff had full strength in all extremeties with good reflexes. Tr. 324. As the ALJ correctly summarized, Dr. Radhakrishnan felt plaintiff's thyroid nodules were unlikely the cause of any of plaintiff's symptoms and did not meet the criteria for biopsies, and her supraclavicular swelling was likely due to steroid use. Tr. 22-23, Tr. 325. Dr. Radhakrishnan also attributed plaintiff's weight gain to her previous use of steroids combined with decreased mobility. Tr. 22, 325.

In August 2011, Plaintiff was referred to an otology clinic for ongoing bilateral ear pressure and sinus issues. Frank M. Warren, M.D., conducted an examination (nasopharyngoscopy/flexible laryngoscopy) which revealed normal bilateral nasal cavities, back of the throat, and voice box. Tr. 330. Dr. Warren indicated "[t]here does not seem to be a unifying diagnosis." Tr. 331.

In September 2011, Plaintiff was referred for a third gastroenterology consultation with Kevin P. Jones, D.O. Tr. 334. Plaintiff complained of chronic abdominal pain and bloating. As the ALJ indicated, Dr. Jones described Plaintiff as a "rambling historian" and included other past and present medical issues. Tr. 23, 335. Dr. Jones recommended repeat laboratory testing and abdominal films, and a trial of neostigmine, and to follow up in one month. Tr. 338. It is unclear whether Plaintiff followed up, as there are no other treatment notes from Dr. Jones in the record before the Court.

In September 2011, Plaintiff was seen by Trisha Copeland, M.D., for hearing sensitivity and hearing loss. Dr. Copeland's examination showed clear ear canals and Plaintiff's hearing sensitivity to 2000 Hz is within normal limits, dropping to mild to moderate sensorineural hearing loss with excellent word recognition ability in the right ear. Tr. 333. Plaintiff also has high frequency mild to moderate sensoineural hearing loss with excellent word recognition in the left ear, and her "tymps" were within normal limits. Tr. 333.

The ALJ thoroughly detailed a July 15, 2013 treatment note from Alan Savoy, M.D., who provided another gastroenterology consultation. Tr. 357. Dr. Savoy indicated Plaintiff has a "very complicated history and is a very difficult historian" as the ALJ indicated. Tr. 23, 357. Plaintiff relayed her medical history, and described to Dr. Savoy that she has had exhaustive workups with multiple EGDs, colonoscopies, capsule endoscopies, CT scans, ultrasounds, and MRIs. Tr. 23, 357. The ALJ noted that Plaintiff informed Dr. Savoy that she was experiencing increased gas, severe abdominal distention, and severe abdominal and intestinal pain. Tr. 24, 357. On examination, plaintiff's abdomen was soft and nontender, distended and firm, with normal bowel sounds; plaintiff's extremities were without edema, deformity, or clubbing. Tr. 359. In her briefing, Plaintiff argues that Dr. Savoy diagnosed "severe abdominal distention" and she suggests that this confirms her ongoing medical complaint. The Court disagrees.

Contrary to plaintiff's contention, Dr. Savoy did not offer a diagnosis of "severe abdominal distention." Tr. 359. Rather, Dr. Savoy noted his impression was "severe abdominal distention" and, as the ALJ acurately noted, her prior exhaustive GI workups have been negative. Tr. 24, 359. Dr. Savoy wanted to obtain and review plaintiff's GI records from Kaiser and OHSU prior to making a specific treatment recommendation. Tr. 359. Furthermore, Dr. Savoy's treatment notes do not

reveal any specific functional limitations that would prevent Plaintiff from engaging in substantial gainful activity. Thus, on the record before the Court, Dr. Savoy's impression of "severe abdominal distention" without more, is insufficient to establish a severe impairment. *See* 20 C.F.R. § 404.1528; *Ukolov*, 420 F.3d at 1004-06 (holding that records without reference to results from medically acceptable diagnostic techniques cannot support a finding of impairment). Therefore, the ALJ reasonably could find that Dr. Savoy's treatment notes do not establish a severe medially determinable impairment. The ALJ's finding is fully supported by substantial evidence in the record, and will not be disturbed. *Molina v. Astrue*, 674 F.3d at 1111 (9th Cir. 2012) (holding that rational inferences drawn from the record must be upheld).

Finally, the ALJ discussed that nonexamining agency physician Martin B. Lahr, M.D., opined that Plaintiff did not suffer from any medically determinable impairment. Tr. 24, 64-65. Agency nonexamining physician Linda L. Jensen, M.D., affirmed Dr. Lahr's assessment on reconsideration. Tr. 24, 81-82. The ALJ gave these opinions great weight, finding them consistent with the medical record as whole. Tr. 24. Although not challenged by plaintiff, the Court concludes the ALJ's determination to give them great weight is fully backed by substantial evidence and without error.

In summary, the ALJ exhaustively examined the medical record and found there was insufficient evidence that any of plaintiff's symptoms or combination of symptoms constitute a medically determinable impairment. The ALJ's findings are wholly supported by substantial evidence. Plaintiff has had numerous, repeated consultations with assorted specialists in multiple disciplines with unremarkable, normal, or negative findings and test results.[3] Based on the lack of

---

[3] Indeed, the record reveals additional benign test results. Plaintiff's test for lupus was negative (Tr. 233); a spinal tap was negative (Tr. 304); a CT scan of her temporal bones was unremarkable (Tr. 300); and an MRI of her auditory canals was grossly unremarkable (Tr. 301).

medical signs and laboratory findings from *any* provider, the ALJ could reasonably conclude that Plaintiff does not have a medically determinable impairment.

Plaintiff complains that the ALJ erroneously evaluated the medical evidence from Drs. Rajasekhana, Radhakrishnan, Jones and Savoy. Plaintiff complains that the ALJ erred in giving weight to their comments that Plaintiff was a "poor" or "difficult historian." Contrary to plaintiff's contention, the ALJ's findings are fully supported by substantial evidence. Indeed, Plaintiff does not point to any test result, medical sign, or other objective finding by Drs. Rajasekhana, Radhakrishnan, Jones, or Savoy that the ALJ failed to consider. Likewise, the Court's careful review of the medical record similarly fails to reveal any objective medical evidence the ALJ failed to analyze that would support Plaintiff's claim. As discussed at length above, the ALJ's interpretation of the medical record is supported by inferences reasonably drawn from the record. *See Molina*, 674 F.3d at 1111. Accordingly, the Court concludes that the ALJ's step two finding is supported by substantial evidence, and is free of legal error. *Ukolov*, 420 F.3d at 1006.

## CONCLUSION

For the reasons set forth above, the Commissioner's final decision denying benefits to Plaintiff is AFFIRMED.

IT IS SO ORDERED.

DATED this 30 day of OCTOBER, 2017.

Malcolm F. Marsh
United States District Judge

13 - OPINION AND ORDER